**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Carol Wilcox,<br><br>   Plaintiff,<br><br>vs.<br><br>Metropolitan Life Insurance Company; Wells Fargo & Company; Wells Fargo Disability Plan; Long Term Disability Plans 1-10; Wells Fargo & Company, as Plan Trustee and Administrator; and Trustees and Plan Administrators 1-10,<br><br>   Defendants. | No. CV 04-0926 PHX-DGC<br><br>**ORDER** |

Pending before the Court are Defendant Metropolitan Life Insurance Company's ("MetLife's") motion for summary judgment, Doc. #39, and Plaintiff's motion for summary judgment, Doc. #41. For the reasons stated below, MetLife's motion will be granted and Plaintiff's motion will be denied.[1]

**I.   Background.**

Plaintiff Carol Wilcox has suffered from, among other things, herniated nucleus pulposus, fibromyalgia, chronic fatigue, and depression. Doc. #43. She applied for and received short term disability benefits from her employer, Wells Fargo & Company ("Wells

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

Fargo"), in March 2001. Docs. #40, 42. These short term disability benefits expired on August 15, 2001. Doc. #40, Exh. E; Doc. #42, App.1. Plaintiff submitted a claim for long term disability benefits under Wells Fargo's Long Term Disability Plan ("Wells Fargo Plan"), which was approved on September 6, 2001, and made effective as of August 16, 2001. Doc. #40, Exh. G.

In a letter dated May 16, 2003, MetLife, the claims administrator, informed Plaintiff that her claim for long term disability benefits was terminated as of May 15, 2003. Doc. #40, Exh. L; Doc. #42, App.4. MetLife's stated reason for the termination of Plaintiff's claim was her failure to provide MetLife with "information necessary to evaluate her claimed ongoing disability." *Id*.

Plaintiff formally appealed the decision on July 3, 2003, and provided MetLife with additional information. Doc. #40, Exh. M; Doc. #42, App. 5. On August 11, 2003, Dr. Tracey Schmidt, a medical consultant for MetLife, independently reviewed Plaintiff's record and concluded that Plaintiff's file lacked sufficient medical evidence to support a finding of a continuing disability. Docs. #40, Exh. Q. On August 25, 2003, MetLife notified Plaintiff that its initial determination was upheld on appeal. Doc. #40, Exh. R; Doc. #42, App. 6.

On July 13, 2004, Plaintiff filed an amended complaint against MetLife, Wells Fargo, and Wells Fargo Plan (collectively, "Defendants"), alleging that her long term disability benefits were wrongfully terminated in violation of the Employment Retirement Income Security Act ("ERISA"). Doc. #3.

MetLife and Plaintiff filed motions for summary judgment. Docs. #39, 41. In their respective motions, the Parties contend that they are entitled to judgment as a matter of law with respect to (1) the proper standard for the Court's review of the denial of Plaintiff's benefits, and (2) whether Defendants satisfied the selected standard.

## II.    Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

1  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Only disputes over facts that might
2  affect the outcome of the suit . . . will properly preclude the entry of summary judgment."
3  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The disputed evidence must be
4  "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.
5  Summary judgment may be entered against a party who "fails to make a showing sufficient
6  to establish the existence of an element essential to that party's case, and on which that party
7  will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

8  **III.   Analysis.**

9        **A.   Standard of Review.**

10        ERISA contemplates different standards of review depending on specific elements of
11  the benefits plan and the circumstances of each case. *De novo* review is the default standard
12  for a plan administrator's denial of benefits.  *See Jordan v. Northrop Grumman Corp.*
13  *Welfare Benefit Plan*, 370 F.3d 869, 875  (9th Cir. 2004) (citing *Kearney v. Standard*
14  *Insurance Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999)). Where the plan grants the administrator
15  discretionary authority to determine eligibility for benefits or construe the terms of the plan,
16  a court reviewing a denial of benefits will generally apply an abuse of discretion standard.
17  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

18        In cases where the administrator is also the funding source for the plan, this deferential
19  standard of review may not be appropriate, as an apparent conflict of interest exists. "[T]he
20  presence of conflict does not automatically remove the deference we ordinarily accord to
21  ERISA administrators who are authorized by the plan to interpret a plan's provisions." *Lang*
22  *v. Long-Term Disability Plan of Sponsor Applied*, 125 F.3d 794, 797 (9th Cir. 1997). To
23  invoke heightened scrutiny, a plaintiff must establish the existence of a "serious" conflict of
24  interest. *See Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1323 (9th Cir.1995). "To
25  make such a showing, the affected beneficiary must come forward with 'material, probative
26  evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's
27  self interest caused a breach of the administrator's fiduciary obligations to the beneficiary.'"
28  *Lang,* 125 F.3d at 798 (quoting *Atwood,* 45 F.3d at 1323). If this showing is made, the

administrator can reclaim the abuse of discretion standard by offering evidence that its self-interest did not actually infect its claim determination. *See id.*

### B. Conflict of Interest.

The Wells Fargo Plan states that "[t]he Plan Administrator has full discretionary authority to administer and interpret the Plan." Doc. #40, Exh. B at 2-5. The Parties appear to be in agreement that MetLife has been granted discretionary authority under the plan. Docs. ##39, 44. Plaintiff argues, however, that "there is substantial evidence of a conflict of interest," requiring the Court to review *de novo* the denial of Plaintiff's benefits. Doc. #41 at 2. As noted above, Plaintiff bears the initial burden of coming forward with evidence, independent of the mere appearance of a conflict of interest, that the administrator breached its fiduciary duties.[2] Plaintiff offers several arguments in support of her contention that a conflict exists, which the Court will address, and reject, in turn.

### 1. Dr. Schmidt's Review.

Plaintiff states that Dr. Schmidt's review of Plaintiff's file was both incomplete, as she was not provided with all medical records, and inadequate, as she ignored evidence in the administrative record, including physical and behavioral therapy, a particular sleep study, information concerning activities of daily living, evidence of "14 or more fibromyalgia tender points," evidence of symptoms of pain and fatigue, mental status examinations related to Plaintiff's concentration difficulties and depression, mental health care provider notes, temporary effect of epidurals, and various findings of physicians in 2003. Doc. #41 at 5-8.

Defendants state that Dr. Schmidt reviewed the entire administrative record and that other information cited by Plaintiff was only introduced in the course of litigation and was not part of the administrative record at the time Plaintiff's claim was evaluated. Doc. #46. Moreover, the final claim denial letter from MetLife to Plaintiff's attorney specifically states

---

[2]Plaintiff's complaints that Defendants did not discuss those "actions" or "conduct" relevant to its fiduciary duty in its motion for summary judgment are inapposite, Doc. #41 at 3-4, as it is Plaintiff's burden to establish the existence of a "serious" conflict of interest.

- 4 -

1 that "Ms. Wilcox' [sic] entire claim file has been reviewed." Doc. #40, Exh. R; Doc. #42, App. 6.

The Court cannot conclude, as a matter of law, that the administrative record was incomplete. Plaintiff failed to come forward with material evidence, such as affidavits, to create a genuine issue as to whether the administrative record before Dr. Schmidt was without information Plaintiff allegedly submitted to MetLife. *See Fed. R. Civ. P. 56(e)*; Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Nor has Plaintiff provided material evidence that Dr. Schmidt did not consider the medical evidence in the administrative record when the file was being reviewed. *See Abatie v. Alta Health & Life Ins. Co.*, 421 F.3d 1053, 1063 (9th Cir. 2005) ("[W]here an ERISA administrator states that it considered the record 'as a whole,' we must assume that it did so, in the absence of clear and convincing evidence to the contrary."); *Jordan*, 370 F.3d at 878 ("That [Defendant] ultimately rejects [Plaintiff's] physicians' views does not establish that it 'ignored' them.")

### 2. Requirement of Objective Evidence.

Plaintiff contends that MetLife wrongly sought "objective evidence," even though the terms of the plan do not "include a requirement that there must be objective evidence to satisfy the definition of a disability." Doc. #41 at 9. Plaintiff further states that MetLife cannot "require objective medical evidence of chronic pain conditions that are not susceptible of objective proof." *Id*. Defendants respond that clinical evidence was sought, irrespective of diagnoses, to support a finding that Plaintiff was "preclude[d] . . . from performing her light duty job requirements for her own or any employer in accordance with the Plan." Doc. #40, Exh. R.

In *Jordan*, the Ninth Circuit stated:

> MetLife denied her claim, not because it asserted that she did not suffer from fibromyalgia, but because it asserted that she had not established that her fibromyalgia disabled her from working. . . . The administrator acknowledged that Jordan had been diagnosed as having firbromyalgia [sic] and did not dispute that Jordan had the condition, or demand objective evidence that she had it. Rather, the administrator asked for evidence that the fibromyalgia she suffered from disabled her from working at her job.

- 5 -

370 F.3d at 877. The Court finds the present case to be similar to *Jordan*. There, as here, the administrator was interested not in a diagnosis of fibromyalgia or chronic fatigue, but in medical evidence supporting that one was disabled as defined by the plan. Accordingly, the Court will rule in favor of Defendants on this point.

### 3. Dr. Schmidt's Citation to a Medical Journal.

Plaintiff objects to Dr. Schmidt's citation to a medical journal, which Plaintiff states was not in the medical file. Doc. #44. In support of her view that Dr. Schmidt's consideration of this journal was improper, Plaintiff cites to *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1993). This case, however, concerns the reliability of expert testimony at trial, not the universe of acceptable information that an ERISA administrator may use in evaluating a claim for benefits. Plaintiff offers no authority to lead the Court to conclude that medical literature cannot be referenced in the course of evaluating a claim for disability benefits.

### 4. Access to Plaintiff's File Prior to Final Denial.

Plaintiff states that her attorney formally requested a copy of her file after receiving notice of the initial termination decision. Doc. #41. Plaintiff alleges that MetLife's failure to provide her with a copy of her file before receiving notice of the final termination decision is evidence of a conflict. *Id.* The Court disagrees. The plan explicitly provides:

> If MetLife denies your claim, you (or your authorized representative) may appeal the decision. Upon written request, MetLife will provide you free of charge with copies of documents, records, and other information relevant to your claim.

Doc. #42, App.2 ch.15 at 14. The plan also indicates that an appeal of the initial termination decision will result in a "final" decision. *Id.* at 15.

After receiving notice of the MetLife's initial decision to terminate Plaintiff's claim, Plaintiff's attorney submitted a letter to MetLife stating that the "letter is to serve as a formal appeal" of the initial termination decision. Doc. #42, App. 5. The letter also included the following request:

> If you are able to reinstate her claim after review of this evidence, then I do not need a copy of her claims file and the relevant policy. However, if you are not able to reinstate, then please immediately send me a <u>complete</u> copy . . . of Ms. Wilcox's claims file.

- 6 -

*Id.* (emphasis in original). In other words, Plaintiff's attorney requested a copy of Plaintiff's files if the claim was not reinstated, i.e., if the final decision (on appeal) was not successful. He did not request information in the interim, prior to the final decision. Plaintiff's inability to review her file was a function of this conditional request, not of MetLife being affected by its financial interests.

Plaintiff additionally argues that, as a result of not receiving her file before the appeal, she was denied an opportunity to challenge MetLife's medical determination (i.e., the "final" decision, which was based on insufficient medical evidence). Doc. #41. Plaintiff provides no authority suggesting that a plan participant in her particular circumstance is entitled to an additional appeal beyond the terms of the contract.

### 5. Improvements in Plaintiff's Condition Noted by Dr. Schmidt.

As further evidence of a conflict, Plaintiff contends that "Dr. Schmidt does not reference any improvement" in her report. Doc. #41. at 5. Thus, according to Plaintiff, Plaintiff's continuing disability is presumed. *Id.*

Defendants indicate, however, that the administrative record provided to Dr. Schmidt explicitly notes improvements in Plaintiff's condition. Doc. #47. The August 25, 2003, letter from MetLife to Plaintiff's attorney itself references improvements in Plaintiff's condition. Doc. #40, Exh. R; Doc. #42, App. 6 (e.g., "overall pain complaints are improved[.]") The Court does not agree that a conflict arises from Dr. Schmidt's alleged failure to note improvements in Plaintiff's condition.

### 6. Conclusion.

In light of the above analysis, Plaintiff has not offered material, probative evidence that MetLife had a serious conflict of interest that may have affected its decision to terminate Plaintiff's benefits. *See Atwood,* 45 F.3d at 1322-23. Accordingly, Plaintiff's claim will be reviewed under an abuse of discretion standard. *See Jordan*, 370 F.3d at 878.

### C. Abuse of Discretion Review.[3]

"The touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Clark v. Washington Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993). Courts have also asked whether the administrator acted in good faith. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). In examining whether a decision to terminate benefits under ERISA was reasonable and made in good faith, a court's role is not to determine if the decision conformed with the most convincing medical evidence. *See MacDonald v. Pan American World Airways, Inc.,* 859 F.2d 742, 744 (9th Cir.1988) ("[O]ur inquiry is not into whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable") (quoting *McDaniel v. National Shopmen Pension Fund*, 817 F.2d 1370, 1373 (9th Cir. 1987); *Jordan,* 370 F.3d at 875 ("When we review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so we cannot substitute our judgment for the administrator's."). Nor is the Court's role to balance the administrator's decision against the weight of contrary medical opinion. *See Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173 (9th Cir. 2005) (holding that, under an abuse of discretion standard, "even a single persuasive medical opinion may constitute substantial evidence upon which a plan administrator may rely in adjudicating a claim."); *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993) (stating that "[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion"). Rather, the Court's role is to determine whether the decision is "grounded on *any* reasonable basis." *Jordan*, 370 F.3d at 875 (emphasis in original). If so, the administrator's decision cannot be disturbed.

In alleging that MetLife abused its discretion, Plaintiff reasserts several of her arguments relating to the existence of a conflict of interest. *See Wilson v. John C. Lincoln*

---

[3]The terms "abuse of discretion" and "arbitrary and capricious" are often used interchangeably. The terms are functionally equivalent. *See Atwood*, 45 F.3d at 1321 n.1 ("The standards differ in name only.")

- 8 -

1  *Health Network Group Disability Income Plan*, 2006 WL 798703, at *4 (D.Ariz. 2006)
2  ("Oftentimes, the same factors that demonstrate a conflict of interest also demonstrate an
3  abuse of discretion.") For example, Plaintiff states that MetLife did not permit her to review
4  her file and disregarded the medical opinions of several physicians. Doc. #41. Rather than
5  echo our reasons for finding these arguments unavailing, the Court limits its remaining
6  discussion to Plaintiff's other contentions.

### 1. MetLife's Failure to Obtain Information.

Plaintiff argues that MetLife's decision was arbitrary and capricious because it "fail[ed] to acquire the necessary and easily obtainable information from Plaintiff's physicians[.]" Doc. #41 at 11. In particular, Plaintiff claims that MetLife breached its fiduciary duty to obtain information sufficient to render an informed decision on behalf of the beneficiary. *Id*.

In support of her argument, Plaintiff cites *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1464 (9th Cir.1997), in which the Ninth Circuit noted that "[h]ad [the administrator] requested the needed information and offered a rational reason for its denial, it would be entitled to substantial deference." Here, MetLife provided Plaintiff with a summary of its reasons for its decision. Doc. #40, Exh. R; Doc. #42, App. 6. Moreover, in furtherance of its fiduciary duties owed to Plaintiff, MetLife requested information from Plaintiff. Doc. #39. Specifically, MetLife requested three items: a "training, education, and experience statement; medical authorization; and office visit notes from April 1, 2002 to present." Doc. #40, Exh. K; Doc. #42, App.3. Plaintiff admits that MetLife was in possession of two of these items, namely the statement and medical authorization, prior to May 16, 2003. Doc. #42 ¶11.

The Court cannot conclude that MetLife abused its discretion by failing to obtain Plaintiff's office visit notes from April 1, 2002 onwards. *See Jordan*, 370 F.3d at 876 (noting that the failure of the administrator to obtain leave slips did not constitute an abuse of discretions in part because "there is no reason shown that Jordan [the participant] could not

1 have produced the leave slips" and that "MetLife *did* ask Jordan for material such as the leave slips.") (emphasis in original).

Similarly, the Court is unable to agree with Plaintiff that MetLife did not have a reasonable basis for its decision as a matter of law. In its August 25, 2003, letter to Plaintiff's attorney, MetLife acknowledged that it considered the following information, among other evidence: that Plaintiff's pain was being "managed" with the use of medication, Plaintiff's fatigue had "improved" with the use of medication, the results of a sleep study were "normal," Plaintiff's "sleepiness during the day was markedly improved," Plaintiff's pain management was also "markedly improved," Plaintiff's symptomatology had "dramatically improved" with medication, pain complaints "improved," Plaintiff's sleep "improved," Plaintiff's pain symptoms "marked[ly] improve[d]," Plaintiff's depression "improved," physical therapy for Plaintiff's leg pain was "helpful," Plaintiff's back pain was "generally under control," Plaintiff's low back pain was "well controlled," Plaintiff's pain complaints were "generally improved," Plaintiff was "ambulating independently," and a physical examination "revealed no distress." Doc. #40, Exh. R; Doc. #42, App. 6.

MetLife acknowledges that the last examination it had was dated April 2, 2003, over four months before Dr. Schmidt conducted her review. *Id.* But the Court does not find this gap to be significant as a matter of law. *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1285 (9th Cir. 1990) (holding that MetLife's "reliance upon medical reports written . . . eight and five months before Metropolitan's decision to terminate his Plan benefits" was not arbitrary and capricious.)

**2.    Reliance on and Qualifications of Dr. Schmidt.**

Plaintiff argues that MetLife abused its discretion by relying on Dr. Schmidt, where Plaintiff's claim was based on "multiple physical examinations" performed by several of her physicians, including her primary care physician. Doc. #43 at 9. The Court notes, however, that the "treating physician rule, which required that a treating physician's medical opinion be given controlling weight as long as it is well supported and consistent with other substantial evidence," *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir.

- 10 -

2005), was disapproved by the Supreme Court. In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), the Justices held that

> courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

For MetLife to rely upon Dr. Schmidt, as opposed to Plaintiff's physicians, where Dr. Schmidt has a reasonable basis for her decision, is not an abuse of discretion. *See Jordan v. Northrop Grumman Corp. Welfare Ben. Plan*, 63 F.Supp.2d 1145, 1163 (C.D.Cal.1999) ("the mere fact that MetLife favored the opinions of the independent medical reviewers is not proof of arbitrary or capricious conduct."), *aff'd*, 370 F.3d 869 (9th Cir. 2004).

Plaintiff also challenges whether Dr. Schmidt was qualified to review Plaintiff's file. Doc. #43. Defendants note in response that Dr. Schmidt is board certified in Internal Medicine and Rheumatology, "the accepted medical specialty area for fibromyalgia." Doc. #45 at 16. The Court disagrees with Plaintiff that MetLife abused its discretion as a matter of law in either basing its decision on Dr. Schmidt's review or in submitting Plaintiff's file to Dr. Schmidt in the first place.

**3.      Relevance of the Social Security Administration Determination.**

Plaintiff additionally argues that a decision by an administrative law judge from the Social Security Administration ("SSA") that Plaintiff "is entitled to a period of disability commencing March 13, 2001, and to Disability Insurance Benefits under. . . the Social Security Act," Doc. #42, App.5, is "instructive." Doc. #52 at 8. To the extent that Plaintiff contends that the administrative law judge's decision demonstrates, as a matter of law, that MetLife's decision was an abuse of discretion, the Court disagrees. *Cf. Wallace v. Intel Corp.*, 2005 WL 3369460, at *9 (D.Ariz. 2005) ("There is simply no requirement that a plan administrator, vested with discretionary authority in its determinations, must give weight to factual findings made by different bodies under disparate standards in order to shield its own determination from more searching review by the courts.") As the Supreme Court stated, there are "critical differences between the Social Security disability program and ERISA

benefits plans." *Nord*, 538 U.S. at 823. Perhaps chief among them is the fact that SSA administrative law judges employ the treating physician rule, which the Supreme Court roundly rejected for purposes of benefits determinations under ERISA. *Id.* at 834. Indeed, the SSA decision referenced by Plaintiff explicitly stated that the opinions of Plaintiff's treating physicians were "accorded controlling weight." Doc. #42, App.5.

### 4. Conclusion.

The Court concludes that MetLife's decision to terminate Plaintiff's claim for long term disability benefits is supported by substantial evidence and is not an abuse of discretion.

**IT IS ORDERED**:

1. Defendant MetLife's motion for summary judgment, Doc. #39, is **granted**.
2. Plaintiff's motion for summary judgment, Doc. #41, is **denied**.
3. The Clerk of the court is directed to terminate this matter.

DATED this 22nd day of May, 2006.

*David G. Campbell*
David G. Campbell
United States District Judge